James V. Marks, Esq. (JM6257)
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007
Tel.:    (212) 513-3200
Fax:    (212) 385-9010

*Attorneys for Defendant Advanced Biohealing, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORGANOGENESIS, INC.,<br><br>                              Plaintiff,<br><br>      - against -<br><br>ADVANCED BIOHEALING, INC.,<br><br>                              Defendant. | 08 Civ. 875 (AKH) |

**DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*Of Counsel:*

        James V. Marks, Esq.
        Christine Tramontano, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

POINT I      INJUNCTIVE RELIEF IS NOT NECESSARY AND THEREFORE
SHOULD NOT BE GRANTED ......................................................................... 2

POINT II     OI HAS FAILED TO MEET ITS BURDEN OF PROOF IN
JUSTIFYING THE ISSUANCE OF A TEMPORARY
RESTRAINING ORDER ................................................................................... 3

     A.    OI Has Failed To Show That It Is Likely To Suffer Irreparable Harm In
the Absence of a Temporary Restraining Order. ............................................... 3

          1.    OI's Injuries are Compensable By Money Damages. .................................. 4

          2.    OI Has Failed to Show a Likelihood of Imminent Harm ............................ 5

          3.    Balance of Equities Tips Against Issuance of Preliminary
Injunction ...................................................................................................... 6

     B.    OI Is Unlikely to Succeed on the Merits of Its Claims ..................................... 8

          1.    OI Is Unlikely to Succeed on the Merits of Its Lanham Act Claims
For False Advertising ................................................................................... 8

          2.    OI Is Unlikely to Succeed on the Merits of Its Lanham Act Claims
For Impliedly False Advertising. ................................................................ 11

          3.    Plaintiff Is Unlikely to Succeed on Its Claim for Tortious
Interference With Prospective Business Advantage. ................................... 13

POINT III    THE RESTRAINING ORDER SOUGHT BY OI IS IMPERMISSIVELY
OVERBROAD ............................................................................................... 15

CONCLUSION ................................................................................................................. 16

i

**TABLE OF AUTHORITIES**

## CASES

Alcan Int'l Ltd., et al., v. S.A. Manufacturing Co., Inc.,
    1999 WL. 605702 (W.D.N.Y. July 14, 1999)...........................................................................9

American Home Products Corp. v. Johnson & Johnson,
    577 F.2d 160 (2d Cir. 1978)...........................................................................................11

American Malting Co. v. Keitel,
    209 F. 351 (2d Cir. 1913)................................................................................................6

American Preferred Prescription Inc. v. Health Management, Inc.,
    252 A.D.2d 414, 678 N.Y.S.2d 1 (1st Dep't 1998) ................................................13

Barr Laboratories, Inc. v. Quantum Pharmics, Inc.,
    827 F. Supp. 111 (E.D.N.Y. 1993) .................................................................................14

Bell & Howell Mamiya Co. v. Masel Supply Co.,
    719 F.2d 42 (2d Cir. 1983)...............................................................................................3

Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh,
    934 F.2d 30 (2d Cir. 1991)...............................................................................................3

Bourne v. Walt Disney Co.,
    No. 02 Civ. 6400, 2003 WL. 721405 (S.D.N.Y. Mar. 3, 2003) .............................2, 6

Bynog v. SL Green Realty Corp.,
    No. 05 Civ.0305, 2005 WL 3497821, at *4 (S.D.N.Y. 2005) ....................................7

Chemfab Corp. v. Integrated Liner Technologies,
    263 A.D.2d 788, 693 N.Y.S.2d 752 (3d Dep't 1999)..............................................13

Coca-Cola Co. v. Tropicana Products Inc.,
    690 F.2d 312 (2d Cir. 1982)...........................................................................................11

Consolidated Brands, Inc. v. Mondi,
    638 F. Supp. 152 (E.D.N.Y. 1986) ..................................................................................5

Danielson v. Local 275,
    479 F.2d 1033 (2d Cir.1973)...........................................................................................5

Datil v. Watson,
    No. 97 Civ. 4970, 1997 WL. 715680 (S.D.N.Y. Nov. 13, 1997) ...............................2

Discovery Group, Inc. v. Lexmark Int'l, Inc.,
    333 F. Supp. 2d 78 (E.D.N.Y. 2004) ...............................................................13, 14

Forschner Group, Inc. v. Arrow Trading Co., Inc.,
    124 F.3d 402 (2d Cir. 1997)...........................................................................15

Freedom Calls Foundation v. Bukstel,
    2006 WL. 845509 (E.D.N.Y. 2006)..............................................................6, 7

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,
    50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) ............................................................14

Gund, Inc. v. SKM Enters., Inc.,
    No. 01 Civ. 0882, 2001 WL. 125366 (S.D.N.Y. Feb. 14, 2001) ...............................3

H&R Indus., Inc. v. Kirshner,
    899 F. Supp. 995 (E.D.N.Y. 1995) ...................................................................14

Iron Mountain Information Management, Inc. v. Taddeo,
    455 F. Supp. 2d 124 (E.D.N.Y. 2006) ..............................................................4, 5

Ivy Mar Co., Inc. v. C.R. Seasons Ltd.,
    907 F. Supp. 547 (E.D.N.Y. 1995) .......................................................................5

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir.1990)...............................................................................4

Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,
    604 F.2d 755 (2d Cir.1979)................................................................................4

Johnson & Johnson  Merck Consumer Pharmaceuticals Co. v.
    Smithkline Beecham Corp.,
    960 F.2d 294 (2d Cir. 1992)...........................................................................11

Johnson & Johnson v. GAC Int'l, Inc.,
    862 F.2d 975 (2d Cir. 1988).............................................................................11

Konigsberg v. Time,  Inc.,
    288 F. Supp. 989 (S.D.N.Y. 1968) ..................................................................6, 7

Krinos Foods, Inc. v. Vintage Food Corp.,
    30 A.D.3d 332, 818 N.Y.S.2d 67 (1st Dep't 2006) ....................................................14

Long Island University v. Grucci for Congress, Inc.,
    10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004).................................................13

Loveridge v. Pendleton Woolen Mills, Inc.,
    788 F.2d 914 (2d Cir. 1986)....................................................................4

MDC Corp. v. John H. Harland Co.,
    2002 WL. 31175246 (S.D.N.Y. 2002)...................................................14

Malaco Leaf, AB v. Promotion in Motion, Inc.,
    287 F. Supp. 2d 355 (S.D.N.Y.2003)I ..................................................12

McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,
    938 F.2d 1544 (2d Cir. 1991)...............................................................11

McNeil-PPC, Inc. v. Pfizer Inc.,
    351 F. Supp. 2d 226 (S.D.N.Y. 2005)..................................................11

Med. Soc'y of New York v. Toia,
    560 F.2d 535 (2d Cir. 1977)...................................................................3

Metropolitan Opera Ass'n,
    239 F.2d at 176-7 ..................................................................................6

Museum Boutique Intercontinental, Ltd. v. Picasso,
    880 F. Supp. 153 (S.D.N.Y. 1995) ........................................................5

N.A.A.C.P., Inc. v. Town of East Haven,
    70 F.3d 219 (2d Cir. 1995)....................................................................3

National Basketball Ass'n v. Sports Team Analysis and Tracking Systems, Inc.,
    939 F. Supp. 1071 (S.D.N.Y. 1996)......................................................9

New Jersey Citizen Action v. Schering-Plough Corp.,
    367 N.J. Super. 8, 842 A.2d 174 (App. Div. 2003) .............................10

Penn Warranty Corp. v. DiGiovanni,
    10 Misc.3d 998 (Sup. Ct. N.Y. Cty. 2005) ..........................................13

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994)...................................................................13

Roso- Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.,
    749 F.2d 124 (2d Cir.1984)...................................................................4

S&L Vitamins, Inc. v. Australian Gold, Inc.,
    521 F. Supp. 2d 188 (E.D.N.Y. 2007) ...........................................11, 12

Semmes Motors Inc. v. Ford Motor Co.,
    429 F.2d 1197 (2d Cir.1970)......................................................................................5

Snyder v. Sony Music Entertainment, Inc.,
    252 A.D.2d 294, 684 N.Y.S.2d 235 (1st Dep't 1999)...............................................13

Time Warner Cable, Inc. v. DIRECTV, Inc.,
    497 F.3d 144 (2d Cir. 2007).......................................................................................3

Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co.,
    144 F. Supp. 577 (S.D.N.Y. 1956) .........................................................................1, 2

USA Network v. Jones Intercable, Inc.,
    704 F. Supp. 488 (S.D.N.Y. 1989) ............................................................................4

Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research Inc.,
    516 F. Supp. 2d 270 (S.D.N.Y. 2007)........................................................................9

Wolff v. Rare Medium, Inc,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002)..................................................................13, 14

Young-Flynn v. Wright,
    No. 05 Civ. 1488, 2007 WL. 241332 (S.D.N.Y. Jan. 26, 2007)................................3

## FEDERAL STATUTES

15 U.S.C. § 1125(a) ...............................................................................................8, 9

Defendant Advanced Biohealing, Inc. ("ABH") respectfully submits this memorandum of law in opposition to that portion of the motion of plaintiff Organogenesis, Inc. ("OI") seeking a temporary restraining order (the "Motion"). ABH intends submit opposition to the remainder of OI's motion seeking a preliminary injunction and expedited discovery when the Court issues a briefing schedule.[1]    In opposition to the Motion, ABH respectfully refers the Court to the Declaration of Keith O'Briant[2] submitted herewith.

## PRELIMINARY STATEMENT

Through its application, OI seeks to obtain the extraordinary relief of a temporary restraining order and preliminary injunction. The relief sought by OI is not only unnecessary but also inappropriate. The requested relief is unnecessary because ABH has already agreed voluntarily to cease the allegedly offending contact – commenting on and distributing the public recall notice – during this action. Moreover, OI has an adequate remedy at law, namely money damages, and has not demonstrated a likelihood of success on its claims. For these reasons, and those discussed more fully below, OI's application should be denied. This is particularly so given that OI's moving papers are merely chock-full of "possiblys," "potentiallys," and "mays" and are devoid of any specifics (e.g., what customers have been confused, what harm caused, etc.).

---

[1] On January 24, 2008, Judge Sand signed an Order to Show Cause scheduling a conference with Judge Hellerstein for January 29, 2008. The Order to Show Cause does not set forth a deadline for ABH to submit opposition papers.
[2] The Declaration of Keith O'Briant is referred to herein as the "O'Briant Decl."

## ARGUMENT

### POINT I

### INJUNCTIVE RELIEF IS NOT NECESSARY AND THEREFORE SHOULD NOT BE GRANTED

As explained in the declaration of Keith O'Briant submitted herewith, AHB has already directed its employees to cease the allegedly offending contact during the pendancy of this action by not commenting on and distributing the public recall notice. See, O'Briant Decl. Moreover, in the settlement agreement being negotiated by the parties prior to OI commencing this action, AHB would agree to stop such conduct permanently. In situations where the offending party has ceased, or agrees to discontinue, the offensive conduct sought to be enjoined, courts have denied preliminary injunctive relief. See, e.g., Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., 144 F. Supp. 577, 583 (S.D.N.Y. 1956) (denying injunctive relief where defendant ceased production and sale of the infringing product and stated it was their intention not to manufacture same during pendency of the action); Bourne v. Walt Disney Co., No. 02 Civ. 6400, 2003 WL 721405, at *5 (S.D.N.Y. Mar. 3, 2003) (holding plaintiff's request for injunctive relief was moot because the offending conduct had ceased); Datil v. Watson, No. 97 Civ. 4970, 1997 WL 715680, at *1 (S.D.N.Y. Nov. 13, 1997) ("Injunctive relief should not be granted if the harmful conduct sought to be enjoined has been discontinued."). As such, in this case the Court should not grant OI temporary or preliminary injunctive relief because OI's complaints are moot since AHB has already ceased the allegedly offending contact.

2

**POINT II**

**OI HAS FAILED TO MEET ITS BURDEN OF PROOF IN
JUSTIFYING THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER**

Even if OI's complaints are not moot, the relief sought by OI "is an extraordinary and drastic remedy which should not be routinely granted." Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); see also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33 (2d Cir. 1991). To obtain a temporary restraining order,[3] the moving party has the burden of demonstrating: (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995); Bell & Howell Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983). Similarly, a plaintiff seeking a preliminary injunction under the Lanham Act must persuade a court not only that it is likely to succeed on the merits, but also that it is likely to suffer irreparable harm in the absence of immediate relief. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 161 (2d Cir. 2007).

**A.    OI Has Failed To Show That It Is Likely To Suffer Irreparable
        Harm In the Absence of a Temporary Restraining Order.**

A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." Bell & Howell, 719 F.2d at 45 (quoting 11 C. Wright and A. Miller, Federal Practice and Procedure § 2948, at 431 (1973)). Specifically, Plaintiff must establish that the harm it claims cannot be adequately compensated by money damages. See

---

[3] The burden imposed on a party seeking a temporary restraining order is the same as the burden imposed on a party seeking a preliminary injunction. Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting Gund, Inc. v. SKM Enters., Inc., No. 01 Civ. 0882, 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001)).

Jackson Dairy, Inc., 596 F.2d at 72; Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914,

917-8 (2d Cir. 1986). Moreover, Plaintiff must show that the harm it claims is both "imminent"

and "likely" if equitable relief is denied. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79

(2d Cir.1990); Iron Mountain Information Management, Inc. v. Taddeo, 455 F. Supp. 2d 124,

132 (E.D.N.Y. 2006). Here, Plaintiff has carried neither of these burdens.

### 1.    OI's Injuries are Compensable By Money Damages.

A preliminary injunction "should not issue upon a plaintiff's imaginative, worst case

scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete

showing of imminent, irreparable injury." USA Network v. Jones Intercable, Inc., 704 F. Supp.

488, 491 (S.D.N.Y. 1989); see also Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604

F.2d 755, 759 (2d Cir.1979) ("mere speculation that there is a possibility that the party seeking

the injunction may in some unproved way suffer loss or damage" is insufficient).

While OI's papers invoke the talismanic language that it has suffered irreparable harm for

which there is no adequate remedy at law (OI Complaint at ¶ 64, 74 & 78), the sections of their

papers discussing its damages tell a substantially different story.  OI alleges losses for expending

time and effort providing two wound care chains with a clarification of the Apilgraf Recall (OI

Complaint at ¶ 53)—losses which are susceptible to monetary calculation.  OI also claims that its

relationships with customers has been damaged and strained.  OI Complaint at ¶ 54 & 55.

Significantly, OI does not allege that it has lost customers or sales as a result of ABH's

communications.  But even if OI did allege and could prove that it lost customers, such loss is

compensable through money damages and does not warrant injunctive relief.   In order to

establish irreparable harm because of an alleged loss of business, OI must allege and prove that it

is threatened with going out of business entirely and not merely the loss of some business. Roso-

4

Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125-26 (2d Cir.1984); Danielson v. Local 275, 479 F.2d 1033, 1037 (2d Cir.1973); Semmes Motors Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir.1970); see also Iron Mountain Information Management, Inc. v. Taddeo, 455 F. Supp. 2d 124, 132 (E.D.N.Y. 2006) (denying injunctive relief and reasoning that "[l]oss of business, if it is not remote or speculative but actual, is a quantifiable injury."); Ivy Mar Co., Inc. v. C.R. Seasons Ltd., 907 F. Supp. 547, 566 (E.D.N.Y. 1995) (holding that the loss of some business to plaintiff as a result of competition by former employees is insufficient to demonstrate irreparable harm); Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F. Supp. 153, 167 (S.D.N.Y. 1995) (the loss or destruction of an entire business can constitute irreparable harm); Consolidated Brands, Inc. v. Mondi, 638 F. Supp. 152, 155 (E.D.N.Y. 1986) (loss in 25% of customer base allegedly resulting from competition by former employees was quantifiable, and accordingly could not form the basis for preliminary injunction).

OI argues that harm should be presumed because the allegedly offending emails are expressly false comparisons of competing products. This is not correct. For example, the first email by Mr. Sole does not make a product comparison. The second email by Ms. Gray contains only truthful statements. As such, irreparable harm should not and cannot be presumed in this case.

### 2.    OI Has Failed to Show a Likelihood of Imminent Harm

In order to establish irreparable harm, Plaintiff also "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Taddeo, 455 F. Supp.2d at 132 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). Plaintiff must also show that irreparable harm is likely, not merely possible. Taddeo, 455 F. Supp. 2d at 132 (citing Goldblatt v. Englander Comm'cns, LLC, 431 F. Supp. 2d 420, 425 (S.D.N.Y. 2006)).

In its papers, OI merely makes the conclusory and speculative allegation that it will "continue to suffer irreparable injury." OI Complaint at ¶ 64. OI, however, has not offered any concrete proof that it has or will suffer harm as a result of ABH's communication, much less that it will suffer irreparable harm or that such harm is imminent. As mentioned, OI's papers are merely full of "possiblys," "potentiallys," and "mays." Irreparable harm also is non-existent given ABH's decision to cease the allegedly offending behavior. See Point I supra; see, e.g., Bourne, 2003 WL 721405, at *6-8 (finding that no irreparable harm would ensue since defendant's infringing conduct had ceased and there was no reasonable expectation that it would resume).

Accordingly, OI has not established a likelihood of imminent harm and its request for a temporary restraining order should be denied.

### 3.    Balance of Equities Tips Against Issuance of Preliminary Injunction

The expansive temporary restraining order that OI seeks would act as an impermissible prior restraint on ABH's First Amendment right to free speech about public information, i.e., the recall. The Second Circuit has consistently subscribed to the view that, absent extraordinary circumstances, injunctions should not ordinarily issue in cases seeking to enjoin speech. See, e.g., Metropolitan Opera Ass'n v. Local 100, Hotel Emples. & Restaurant Emples. Int'l Union, 239 F.3d 172, 177 (2d Cir. 2001) (citing American Malting Co. v. Keitel, 209 F. 351, 354 (2d Cir. 1913)); Freedom Calls Foundation v. Bukstel, 2006 WL 845509, at *22 (E.D.N.Y. 2006).

Even when such extraordinary circumstances are present, the Second Circuit has recognized that "current First Amendment principles may prohibit granting an injunction" because "prior restraints [on expression] are the most serious and the least tolerable infringement on First Amendment rights." Metropolitan Opera Ass'n, 239 F.2d at 176-7; Konigsberg v. Time,

6

Inc., 288 F.Supp. 989 (S.D.N.Y. 1968) ("A court of equity will not, except in special circumstances, issue an injunctive order retraining libel or slander or otherwise restricting free speech. To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution.").

Therefore, courts are reluctant to grant injunctions based on speech because "prior restraint [in] the form of a court-issued injunction [increases] the risk of infringing on speech protected under the First Amendment." Id. at 176. Even if the plaintiff alleges that the defendant's false statements about the plaintiff's business may injure plaintiff, that alone does not constitute a sufficient ground for issuance of an injunction because such injuries have an adequate remedy at law. Freedom Calls Foundation v. Bukstel, 2006 WL 845509, at *22 (E.D.N.Y. 2006) (citing Bynog v. SL Green Realty Corp., No. 05 Civ.0305, 2005 WL 3497821, at *4 (S.D.N.Y. 2005)).

Here, OI seeks to enjoin ABH from engaging in free speech and from disseminating and commenting on publicly available information (e.g., the Apligraf recall notice). OI also seeks to enjoin ABH from advertising and differentiating itself in the marketplace as a result of the Apilgraf recall by demonstrating the benefits and differences of ABH's product. The law is clear that an injunction should not issue when the effect of the injunction is to limit free speech. This factor alone tips the scales of equity in ABH's favor, and the Court should, therefore, deny OI's application for a temporary restraining order. And as discussed below, OI has not offered any proof that the statements made in ABH's communication were false. Nonetheless, even if OI did make an offering of such proof, false statements pertaining to one's business is an insufficient justification for the Court to issue a prior restraint on speech. Freedom Calls Foundation v. Bukstel, 2006 WL 845509, at *22 (E.D.N.Y. 2006) (citing Bynog v. SL Green Realty Corp., No.

05 Civ.0305, 2005 WL 3497821, at *4 (S.D.N.Y. 2005)). This is particularly so in the instant

case because OI has neither specifically articulated in what way it has been harmed, or could be

harmed, nor offered any proof of imminent or likely harm. Moreover, OI has not alleged that

there are extraordinary circumstances indicating that ABH would be unable to satisfy a money

judgment in the unlikely event that OI is successful in litigating the underlying claims in the

Complaint.

**B.    OI Is Unlikely to Succeed on the Merits of Its Claims**

OI's conclusory allegations fall far short of carrying its burden of showing that its claims

have presumptive merit such as would justify the expansive temporary relief OI seeks.

**1.    OI Is Unlikely to Succeed on the Merits of Its
Lanham Act Claims For False Advertising.**

To establish a Lanham Act claim based on a false representation of a product, OI must

show: (1) that ABH has made false or misleading statements as to his own product or another's;

(2) that there is actual deception or at least a tendency to deceive a substantial portion of the

intended audience; (3) that the deception is material in that it is likely to influence purchasing

decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a

likelihood of injury to OI in terms of declining sales, loss of good will, or the like. Lanham Act,

15 U.S.C. § 1125(a). With respect to the third element, the plaintiff must make "some showing

that the defendant's misrepresentation was material in the sense that it would have some effect on

consumers' purchasing decisions . . . [im]material misrepresentations are not actionable because

they do not have an adverse effect on either of the groups which the Lanham Act seeks to

protect. Such statements are, by their very definition, ones which the purchasing public would

not rely on in making its purchasing decisions, and accordingly, ones which do not have an

adverse or unfair impact on others in the business community competing for these customers . . .In assessing whether a defendant's statements are material, a court must consider the advertisement in its entirety rather than engage in disputatious dissection." <u>National Basketball Ass'n v. Sports Team Analysis and Tracking Systems, Inc.</u>, 939 F. Supp. 1071, 1109-1110 (S.D.N.Y. 1996) (vacated in part on other grounds); <u>Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research Inc.</u>, 516 F.Supp.2d 270, 284 (S.D.N.Y. 2007) ("The false, misleading or confusing representation must have misrepresented an inherent quality or characteristic of the goods, services or commercial activities at issue."); <u>Alcan Int'l Ltd., et al., v. S.A. Manufacturing Co., Inc.</u>, 1999 WL 605702, *9 (W.D.N.Y. July 14, 1999) ("To establish a false advertising claim, in addition to proving falsity, a plaintiff must show that the defendant misrepresented an inherent quality or characteristic of the product or services. This requirement is essentially one of materiality, in that plaintiff must establish that the deception is likely to influence consumer purchasing decisions.).

In this case, OI has not, and cannot show, that any alleged misstatements were "material." For example, it has not shown that the statements had some effect on consumers' purchasing decisions. Moreover, OI has not demonstrated that the purchasing public would rely on the statements when making its purchasing decisions or that the statements had an adverse or unfair impact on others in the business community competing for customers.

OI alleges in this action that ABH engaged in false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by sending communications referencing ABH's product Dermagraft and stating that "the advantages of cryropreservation over the rest of the products out there are countless. Most importantly, Dermagraft goes through 14 day sterile testing by the

FDA before it is shipped. This leaves no chance for contamination and 100% confidence in safety for your patients' wounds." OI Complaint at ¶ 60.

OI alleges that this statement is false because Dermagraft underwent a recall in 1998 for endotoxin levels that did not meet FDA standards and a 2003 recall for distributed product that did not meet specifications. OI Complaint at ¶ 60. However, these recalls occurred prior to ABH's involvement with the product. In any event, ABH's statements are more akin to unactionable statements of puffery than to actionable statements of fact. For example, in New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 842 A.2d 174 (App. Div. 2003), the court held that a pharmaceutical company's direct-to-consumer advertising for allergy medication, which included a statement that "you... can lead a normal nearly symptom-free life again" were expressions in the nature of puffery, not statements of fact, and thus were not actionable under the Consumer Fraud Act. Further, the court found that the statements were not a guarantee of total and universal effectiveness, and the fact that the medication remained subject to strict regulation by Food and Drug Administration and that the medication was available only by prescription attenuated the relationship between advertising claims and consumers' purchase of medication. Id.

With respect to the likelihood of injury to OI, OI's own moving papers demonstrate that they will be unable to prove declining sales or loss of goodwill. OI makes the conlcusory allegation that it will suffer irreparable harm as a result of ABH's communication, but then admits that it cannot even ascertain the nature of injury. OI Complaint at ¶ 64 & 74.

OI has failed sufficiently to plead – let alone show that it is likely to prove – its claims as to a number of the requisite elements, particularly that the statements were false and that there is a likelihood of injury to OI in terms of declining sales, loss of good will, or the like.

2.    **OI Is Unlikely to Succeed on the Merits of Its
Lanham Act Claims For Impliedly False Advertising.**

The law governing false advertising claims under the Lanham Act is well settled in this

Circuit. In order to recover damages or obtain equitable relief, a plaintiff must show that either:

(1) the challenged advertisement is literally false, or (2) while the advertisement is literally true it

is nevertheless likely to mislead or confuse consumers. Johnson & Johnson * Merck Consumer

Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992); McNeil-

P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991); Johnson &

Johnson v. GAC Int'l, Inc., 862 F.2d 975, 977 (2d Cir. 1988); Coca-Cola Co. v. Tropicana

Products Inc., 690 F.2d 312, 317 (2d Cir. 1982); American Home Products Corp. v. Johnson &

Johnson, 577 F.2d 160, 165 (2d Cir. 1978).

In order to sustain its burden in proving implied falsehood, a "plaintiff must demonstrate,

by extrinsic evidence, that the challenged commercials tend to mislead or confuse consumers."

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960

F.2d 294, 297 (2d Cir. 1992); Johnson & Johnson v. GAC Int'l, Inc., 862 F.2d 975, 977 (2d Cir.

1988). Coca-Cola Co. v. Tropicana Products Inc., 690 F.2d 312, 317 (2d Cir. 1982); American

Home Products Corp. v. Johnson & Johnson, 577 F.2d 160, 165 (2d Cir. 1978).

Typically, an implied claim is proven through the use of a consumer survey that shows a

substantial percentage of consumers are taking away the message that the plaintiff contends the

advertising is conveying. Johnson & Johnson*Merck, 960 F.2d at 298 (emphasis added);

McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 249 (S.D.N.Y. 2005). If a plaintiff offers

no consumer surveys, expert reports, or consumer complaints establishing that a substantial

percentage of consumers take away the allegedly implied message, plaintiff's Lanham Act claim

must fail. S&L Vitamins, Inc. v. Australian Gold, Inc., 521 F. Supp. 2d 188 (E.D.N.Y. 2007);

<u>Malaco Leaf, AB v. Promotion in Motion, Inc.</u>, 287 F. Supp. 2d 355, 379 (S.D.N.Y.2003) (granting summary judgment for defendants on false advertising claim where plaintiff failed to present any evidence on consumer perceptions) (citing <u>Johnson & Johnson v. Smithkline Beecham Corp.</u>, 960 F.2d 294, 297-98 (2d Cir. 1992) (affirming denial of injunctive relief where evidence failed to support assertion that defendant's commercial communicated a false message to consumers); <u>Hilton Int'l Co., Inc. v. Hilton Hotels Corp.</u>, 888 F.Supp. 520, 538 (S.D.N.Y.1995) (false advertising claim fails where the advertisement was not literally false and there was no survey to establish implied falsity).

In making this determination, the court may consider the commercial context, defendant's prior advertising history, sophistication of the advertising audience, the text and images used in the advertisement, and the evidence offered to prove or disprove the truth of the advertisement. <u>S&L Vitamins, Inc. v. Australian Gold, Inc.</u>, 521 F. Supp. 2d 188 (E.D.N.Y. 2007).

OI claims that ABH's communication implied that OI selectively sent out the Apilgraf Recall letter to certain physicians, that Apilgraf is not safety tested prior to release, that the FDA is involved in the Dermagraft manufacturing process, that Apilgraf fails to meet FDA standards, and that Apilgraf is not safety tested prior to distribution.  OI Complaint at ¶ 68-71.  However, OI offers no proof whatsoever that any of its customers were mislead or confused as to any of the above allegations.  At most, OI has made the unsubstantiated allegation that its customers were confused as to whether any of the products they purchased were part of the recall.  OI does not allege that customers were confused about whether Apilgraf is safety tested, whether Apilgraf meets FDA standards, or whether the FDA is involved in the Dermagraft manufacturing process. Given that Apilgraf customers are health care professionals, OI is not likely to be successful in proving that this highly sophisticated subsection of the consumer population was misled into

believing that Apilgraf is not safety tested and that the FDA is involved in manufacturing Dermagraft.

### 3.    Plaintiff Is Unlikely to Succeed on Its Claim for Tortious Interference With Prospective Business Advantage.

"To establish a tortious interference with prospective business advantage plaintiff must plead the following elements: (i) there is a business relation with a third party; (ii) defendant interfered with those business relations; (iii) the defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; (iv) and an injury to the relationship resulted." Wolff v. Rare Medium, Inc, 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002) (citing Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994); see also Discovery Group, Inc. v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004).

Just as with a claim for tortious interference with contract, a claim for tortious interference with prospective business advantage requires a showing that but for acts of interference by defendant, the business relations would not have been affected. See Snyder v. Sony Music Entertainment, Inc., 252 A.D.2d 294, 300, 684 N.Y.S.2d 235, 239 (1st Dep't 1999); Long Island University v. Grucci for Congress, Inc., 10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004) (plaintiff must show with "reasonable certainty [that] a contract would have been entered into but for the defendant's interference"); Chemfab Corp. v. Integrated Liner Technologies, 263 A.D.2d 788, 693 N.Y.S.2d 752 (3d Dep't 1999); American Preferred Prescription Inc. v. Health Management, Inc., 252 A.D.2d 414, 418, 678 N.Y.S.2d 1, __ (1st Dep't 1998); Penn Warranty Corp. v. DiGiovanni, 10 Misc.3d 998 (Sup. Ct. N.Y. Cty. 2005) (rejecting claim for tortious interference for failure to identify with reasonable certainty particular customers lost as result of alleged interference).

13

"Tortious interference with prospective business advantage requires more culpable conduct on the part of the defendant' than tortious interference with contractual relations." Wolff v. Rare Medium, Inc, 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002); MDC Corp. v. John H. Harland Co., 2002 WL 31175246 (S.D.N.Y. 2002) (level of interference necessary to support claim for tortious interference with prospective advantage "significantly higher" than that required for tortious interference with contract). A plaintiff is required to come forth with proof that the defendant engaged in fraudulent or criminal conduct in connection with a claim of torious interference with business relations. H&R Indus., Inc. v. Kirshner, 899 F. Supp. 995, 1008 (E.D.N.Y. 1995); Krinos Foods, Inc. v. Vintage Food Corp., 30 A.D.3d 332, 333, 818 N.Y.S.2d 67, 68 (1st Dep't 2006).

"Particularly where parties are competitors, 'it may excuse defendant from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful.'" Discovery Group, Inc. v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004); Barr Laboratories, Inc. v. Quantum Pharmics, Inc., 827 F. Supp. 111, 118-9 (E.D.N.Y. 1993); Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 190-91, 428 N.Y.S.2d 628 (1980) ("wrongful means" for purposes of intentional interference with business advantage does not include "persuasion alone although it is knowingly directed to interference with the contract").

Once again, OI offers no proof that it has lost business or that its business relations have been affected other than its bald assertion that its relationships with customers have become strained. OI has not identified a single lost customer resulting from the ABH communication. Indeed, the proof offered by OI directly contradicts this unsupported allegation and shows that

14

Apilgraf customers are just as loyal to OI after the ABH communication as they had been before. Exhibit 5 to OI's Complaint is an email from Limor Glazer-Schwam in response to an ABH employee's attempted recall of an email containing the Apilgraf Recall Letter. In this email, Ms. Schwam states to the ABH employee, "Shame on you", thus indicating that OI's customer relationships were not injured as a result of ABH's communication.

## POINT III

## THE RESTRAINING ORDER SOUGHT BY OI IS IMPERMISSIVELY OVERBROAD

"It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation." Forschner Group, Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 406 (2d Cir. 1997). "The primary objection to broad injunctive orders is the fear that they will impose unnecessary restraints on individual freedom and prohibit lawful and socially desirable activity." Wright & Miller § 2955.

The injunction OI seeks in this case is overly broad in that OI seeks to enjoin all of ABH's speech regarding the recall. The recall, however, is public information, and OI's problems with its product is a fair way for ABH to distinguish its product.

15

## **CONCLUSION**

Based upon the foregoing, ABH respectfully requests that OI's request for a temporary restraining order be denied in its entirety.

Dated: New York, New York
       January 29, 2008

                    HOLLAND & KNIGHT LLP

                    By: _____
                         James V. Marks (JM 6257)

                    195 Broadway, 24th Floor
                    New York, New York  10007
                    (212) 513-3200
                    Attorneys for Defendant

# 5084172_v7

16